# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:12-CR-00097(ERW) |
| | ) |
| ALIREZA BAKHTIARI, | ) |
| | ) |
| Defendant. | ) |

WAIVER OF INFORMATION/CHANGE OF PLEA HEARING

**BEFORE THE HONORABLE E. RICHARD WEBBER**
**UNITED STATES DISTRICT JUDGE**

**AUGUST 7, 2012**

**APPEARANCES:**

FOR PLAINTIFF:      DEAN JOHN SAUER
                    OFFICE OF U.S. ATTORNEY
                    111 South Tenth Street, Suite 2000
                    St. Louis, MO  63102
                    (314) 539-2200


FOR DEFENDANT:      ANDREA SMITH
                    715 W. Rosehill
                    Kirkwood, MO  63122
                    (314) 822-2735


COURTROOM CLERK:    MELANIE BERG

REPORTED BY:        DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                    Official Court Reporter
                    United States District Court
                    111 South Tenth Street, Third Floor
                    St. Louis, MO  63102
                    (314) 244-7449

```
 1              (PROCEEDINGS BEGAN AT 11:10 AM.)

 2         THE COURT:  Good morning.

 3         MR. SAUER:  Good morning, Your Honor.

 4         MS. SMITH:  Good morning, Judge.

 5         THE COURT:  I have a form that's called a "Waiver of

 6    Indictment."  Is that to be presented at this time?

 7         MS. SMITH:  Yes.

 8         THE COURT:  Okay.  I acknowledge it, and it will be

 9    filed at this time.

10         MS. SMITH:  And, Your Honor, may I put on the record

11    right now --

12         THE COURT:  Sure.  Go ahead.

13         MS. SMITH:  -- our understanding?

14         We don't need to do an amendment of the superseding

15    information we're filing, but I understand, and Mr. Sauer

16    agrees with us, that the date there in Count II is from

17    January 11th, 2012, through January 15th.  And, of course, as

18    we know, the legal implication of "on or about January

19    15th" --

20         THE COURT:  Sure.

21         MS. SMITH:  -- is sort of a vague concept, so we're

22    saying that for that period.

23         THE COURT:  Okay.

24         MS. SMITH:  But we didn't think we needed to type up

25    the new documents and present them and postpone this hearing,
```

1    Your Honor.

2            THE COURT:  I'll just change it.  How's that?

3            MS. SMITH:  Yes, sir.

4            THE COURT:  Okay.  And it would be Count II, and it

5    will say "on," and then you tell me what I need to put in.

6    I'm going to scratch out "on" -- I'm going to scratch out "or

7    about January 15th, 2012," correct?

8            MS. SMITH:  Yes, sir.

9            THE COURT:  Scratch that out, okay.  Just a second.

10   Just a second.  Let me get that done.

11           All right.  That's done.  Now then, "On" ---

12           MS. SMITH:  January 11th, 2012, through January 15th,

13   2012.

14           THE COURT:  January 11, 2012, to what?

15           MS. SMITH:  January 15th, 2012.

16           MR. SAUER:  And, Judge, I actually requested that it

17   goes through the 18th because there is -- there is conduct on

18   the 18th that is referred to in the Stipulation of Facts.

19           THE COURT:  The 18th, is that okay?

20           MS. SMITH:  Yes, Your Honor.

21           THE COURT:  Okay.  I have initialed that.  And today

22   is the 7th, correct?

23           So now it's going to read, "From" -- I'm going to

24   take out the "On," too -- "From January 11th, 2012, to January

25   18th, 2012."  Is that better?

```
1              MS. SMITH:  Yes, Your Honor.

2              MR. SAUER:  No objection, Judge.  Thanks.

3              THE COURT:  Okay.

4              MS. SMITH:  Thank you, Your Honor.

5              THE COURT:  The case I'm calling is United States of

6    America versus Alireza Bakhtiari.  Case number is

7    S1-4:12-CR-00097(ERW).

8              Before the case was called, I was instructed or

9    reminded or asked to note in Count II that the language "on or

10   about January 15th, 2012," could be made more specific.  So I

11   have interlineated, and now it reads, "From January 11th,

12   2012, to January 18th, 2012, in St. Louis County," and that

13   has been accomplished.

14             I understand the matter comes before the Court today

15   on a change of plea, and then an agreement has been reached in

16   this matter.  Am I correct?

17             MS. SMITH:  Yes, Your Honor.

18             MR. SAUER:  Yes, Your Honor.

19             THE COURT:  Okay.  Would you, please, raise your

20   right hand, sir, and take an oath at this time?

21             THE CLERK:  Do you solemnly swear or affirm that the

22   statements you're about to make before this Court will be the

23   truth, the whole truth and nothing but the truth, so help you

24   God?

25             THE DEFENDANT:  I do.
```

```
 1              THE COURT:  Okay.  Thank you, sir.

 2   QUESTIONS BY THE COURT:

 3   Q     Would you, please, state your full name and your address?

 4   A     Alireza Bakhtiari.  I reside on 3889 Walsh Street,

 5   St. Louis, Missouri, Your Honor.

 6   Q     Okay.  How old are you, sir?

 7   A     I'm 36 years old.

 8   Q     And your Social Security Number, please?

 9   A     It's 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.

10   Q     All right.  Under the Fifth Amendment to the

11   United States Constitution, you have a right to remain silent

12   today and say nothing.  If you answer questions, it's

13   important to do so truthfully because all of your answers are

14   being recorded by the court reporter, and they might be used

15   against you at a later time in another prosecution for perjury

16   or for making a false statement or in some other proceeding.

17              If you start to answer questions and then change your

18   mind and want to stop, all you have to do is step back from

19   the microphone and that will terminate the question.  Do you

20   understand?

21   A     Yes, sir.

22   Q     Ms. Smith is right beside you today.  If at any time you

23   want to have a conversation with her about anything, just step

24   back from the microphone without asking permission and take

25   whatever time you need for your conversations with her.  We're
```

```
 1   in no hurry today, and the most important thing is that you

 2   understand the nature of these proceedings.

 3          Please do not answer any question unless you fully

 4   understand it.  If you do not, ask me to rephrase or repeat it

 5   or ask her to explain it to you.  Will you do that, sir?

 6   A     Yes, Your Honor.

 7   Q     Unless and until a jury or a judge decides you're guilty,

 8   under the law you are presumed to be innocent.  The

 9   United States Government, through Mr. Sauer, has the

10   responsibility to prove your guilt to the satisfaction of a

11   jury or a judge.  You have no duty to prove that you are

12   either guilty or innocent.  Are you aware of that?

13   A     Yes, Your Honor.

14   Q     If you waive or give up your right to remain silent and

15   consent or agree to answer questions I'm about to ask you

16   today, you will be saying some things that are harmful to you,

17   which incriminate you and which will actually convict you.  So

18   if you answer questions which I'm about to ask and which you

19   have no duty to answer, by your own words you will be

20   convicting yourself and you'll relieve Mr. Sauer of the

21   responsibility of proving your guilt.  Are you aware of that?

22   A     Yes, Your Honor.

23   Q     What is your educational background, sir?

24          Wait; wait.  I forgot to ask you a very important

25   question.
```

```
 1              Before you answer this question, please confer
 2    briefly with Ms. Smith.
 3              Do you waive or give up your right to remain silent
 4    and consent or agree to answer my questions?
 5              (Pause)
 6    A    I do, Your Honor.
 7    Q    Okay.  What is your educational background?
 8    A    I have a Master Degree, pharmaceutical, dental or
 9    chemistry, and I audited law classes in order to be able to
10    assist patent attorneys to do patent pharmaceuticals.
11    Q    I needed you last week.  We had a patent trial that
12    lasted for three-and-a-half weeks and your -- your expertise
13    would have been extraordinarily helpful to me.
14    A    Well, Your Honor, I'm sorry I was not available.
15    Q    All right.  Well, that's amazing.  I don't think we get
16    to be in the company of individuals so highly trained.
17              Have you ever been treated for mental illness or
18    mental disease at any time in your life?
19    A    Yes, Your Honor.
20    Q    Do you recall the diagnosis?
21    A    Yes, Your Honor.
22    Q    All right.  I mean it's not important to me that it be
23    disclosed on the record.
24              THE COURT:  Is it known to you, Ms. Smith?
25              MS. SMITH:  No.
```

1   A    It is Post-Traumatic Stress Disorder, Your Honor.

2   Q    (By The Court)  Okay.  All right.  Have you ever been

3   treated for addiction to narcotic drugs or controlled

4   substances of any kind at any time?

5   A    No, Your Honor.

6   Q    Have you consumed controlled substances, illegal drugs,

7   alcoholic beverages, mind-altering drugs or prescription drugs

8   within the last 12 hours?

9   A    No, Your Honor.

10  Q    In a moment I'm going -- Well, we're working with an

11  information today, so I need to ask you a whole bunch of extra

12  questions.

13       What I need to do, since we're going to proceed on an

14  information and not under an indictment, I need to ask you a

15  number of other questions because you have a right under the

16  law, if you want it, to be so charged and be charged by an

17  indictment but you may waive that right.

18       A Grand Jury is composed of at least 16 persons and

19  not more than 23 persons.  At least 12 grand jurors must find

20  that there is probable cause to believe that you committed the

21  crime with which you are charged and that a crime was

22  committed before you may be indicted.  Do you understand that

23  you have a right to have these decisions made by a Grand Jury?

24  A    Yes, Your Honor.

25  Q    Do you know, sir, that you have a constitutional right to

1    be charged by an indictment of a Grand Jury but you may waive

2    that right and consent to being charged by an information

3    filed by the United States Attorney?

4    A    Yes, Your Honor.

5    Q    Do you know, sir, that instead of a Grand Jury

6    indictment, the felony charge in this case has been brought

7    against you by the United States Attorney filing an

8    information?

9    A    Yes, Your Honor.

10   Q    Do you also understand that if you do not waive

11   indictment, you may not be charged with a felony unless a

12   Grand Jury finds that there's probable cause to believe that a

13   crime has been committed and that you committed it?

14   A    Yes, Your Honor.

15   Q    Are you aware that if you do not waive indictment by a

16   Grand Jury, the United States may present the case to a

17   Grand Jury and request that a Grand Jury indict you?

18   A    Yes, Your Honor.

19   Q    Do you realize that a Grand Jury might or it might not

20   indict you?

21   A    Yes, Your Honor.

22   Q    If you waive indictment by a Grand Jury, the case will

23   proceed against you on the information just as though you had

24   been indicted by a Grand Jury.  Are you aware of that?

25   A    Yes, Your Honor.

```
 1              THE COURT:  I have been -- I have a written Waiver of

 2    Indictment form.  Is that -- Is there a form there at the

 3    table?  Here's one.

 4              MS. SMITH:  We handed our signed copy up to you.

 5              THE COURT:  Okay, very well.  Okay, thank you.

 6              Ms. Smith, do you know of any reason why your counsel

 7    should -- your client should not be -- should not waive

 8    indictment by a Grand Jury?

 9              MS. SMITH:  No, Your Honor.  But if I may, he said he

10    had been diagnosed with PTDS.  I whispered to him, "Is that a

11    result of his time as a revolutionary guard," and he said,

12    "Yes, that was."

13              THE COURT:  Okay.

14              MS. SMITH:  But that was 20 years ago, so.

15    A    Well, Your Honor, it's actually Post-Traumatic Stress

16    Disorder which is after any kind of -- any kind of battle

17    activity, --

18    Q    All right.

19    A    -- war activity that occurs.

20    Q    Right.

21    A    Now it's PTSD, Post-Traumatic Stress Disorder, and it

22    goes back 20 years ago.

23              MS. SMITH:  He said it to me, Your Honor.  I have no

24    reason to believe that he's not competent --

25              THE COURT:  Sure.
```

```
 1              MS. SMITH:  -- to proceed.  He's willing to proceed

 2    and understands the Plea Agreement that we signed more than a

 3    month ago, Your Honor.

 4              THE COURT:  Okay.

 5              MS. SMITH:  And we are ready to proceed, Your Honor.

 6              THE COURT:  Okay.  Now I understand from some

 7    personal involvement about Post-Traumatic Stress Disorder,

 8    some individuals regard that as a matter of less than -- with

 9    less significance than it deserves.  So I'm very much aware of

10    that diagnosis.

11    Q    (By The Court)  Have you discussed the matter of waiving

12    your right to indictment by a Grand Jury with Ms. Smith?

13    A    Yes, Your Honor.

14    Q    Do you understand that you have a right to be indicted by

15    a Grand Jury?

16    A    Yes, Your Honor.

17    Q    Have any promises been made to you or threats made

18    against you to induce you to waive your right to indictment by

19    a Grand Jury?

20    A    No, Your Honor.

21    Q    We're separated by about 16 feet.  Is that your signature

22    that appears on that form?

23    A    Yes, Your Honor.

24    Q    Did you read the document before you signed it?

25    A    Yes, Your Honor.
```

1    Q     Do you believe you fully understand all of the terms of

2    this Waiver of Indictment before you signed it?

3    A     Yes, Your Honor.

4    Q     Do you wish to waive your right to indictment by a Grand

5    Jury?

6    A     Yes, Your Honor.

7           THE COURT:  The Court finds that the Waiver of

8    Indictment by a Grand Jury was knowingly, voluntarily,

9    willfully and intelligently made.  It is the Order of the

10   Court that the written Waiver of Indictment be entered of

11   record at this time.

12          Would you read the information at this time,

13   Mr. Sauer?

14          MR. SAUER:  Yes, Your Honor.

15          The superseding information that's been filed today

16   by the Government reads as follows:

17          Count I:  The United States Attorney charges that on

18   or about January 15th, 2012, in St. Louis County, in the

19   Eastern District of Missouri and elsewhere, Alireza Bakhtiari,

20   also known as Al Bakt, the Defendant herein, did knowingly

21   transmit in interstate commerce a communication containing a

22   threat to injure the person of another, to wit:  An e-mail

23   message addressed to B.H.; in violation of Title 18, United

24   States Code, Section 875(c).

25          Count II reads -- And I'll read the version with the

1    interlineation that Your Honor referred to earlier.  Count II

2    reads:  The United States Attorney further charges that

3    from --

4            THE COURT:  Right, from January.

5            MR. SAUER:  -- from January 11th, 2012, to January

6    18th, 2012, in St. Louis County, in the Eastern District of

7    Missouri and elsewhere, Alireza Bakhtiari, also known as

8    Al Bakt, the Defendant herein, did corruptly attempt to

9    obstruct, influence and impede an official proceeding, to wit:

10   The federal civil lawsuit docketed in the Eastern District of

11   Missouri as Bakhtiari against Al-Khaledy, No.

12   4:11-CV-971(SNLJ); in violation of Title 18, United States

13   Code, Section 1512(c)(2).

14   Q    (By The Court)  All right.  Do you understand the charges

15   pending against you in this case?

16   A    Yes, Your Honor.

17   Q    Approximately how long have you known Ms. Smith?

18   A    Personally?

19   Q    Yes, as your counsel.

20   A    As my counsel, she entered her appearance on or about

21   March 27th or 28th, and that's the first time when we met.

22   Q    Okay.  All right.  Have any other attorneys assisted you

23   besides Ms. Smith?

24   A    No, Your Honor, but I wanted for the clarification on the

25   record inserted here that Judge Adelman allowed me to perform

 1   as my own co-counsel.

 2   Q     Okay.

 3   A     Her and I have been the only counsels --

 4   Q     Okay.

 5   A     -- on behalf of the defense involved.

 6   Q     Okay.  All right.  And in doing that, Judge Adelman

 7   recognized your right to behave in that fashion.  So what I

 8   want to do is separate a little bit.  When I ask -- When I

 9   ordinarily ask this question, it reads as follows:

10         Has Ms. Smith conducted herself in a manner that

11   causes you to have any complaint against her as your lawyer

12   either because of something she did, something she failed to

13   do, or for any other reason?  I want to amend that just a

14   little bit and say:  In her role in assisting you, do you have

15   any complaint against her because of something she did,

16   something she failed to do or for any other reason?

17   A     Absolutely not.

18   Q     All right, very well.  Thank you, sir.

19         Now as you stand here today, you have a number of

20   important rights because your plea is still not guilty.  If

21   you change your plea from "not guilty" to "guilty," you will

22   be waiving or giving up a number of important rights, and in

23   this case those rights will never hereafter be available to

24   you again.  I want to go over some of the rights that you will

25   be giving up if you enter a plea of guilty in this case.

1          Do you know that you have a right to maintain your

2     plea of "not guilty" and require the United States, through

3     Mr. Sauer, to prove your guilt to the satisfaction of a jury

4     or a judge where he would bear the burden of proof beyond a

5     reasonable doubt?

6     A     Yes, Your Honor.

7     Q     Do you understand if you cannot afford to pay the

8     expenses of a trial, a trial will be provided at no cost to

9     you and that would include the services of a lawyer?

10    A     Yes, Your Honor.

11    Q     Do you understand further that you have a right to assist

12    at all times your counsel.  You have a right to represent

13    yourself, as you already know, and to be assisted by a

14    counsel, if you choose to do that.  You and your counsel have

15    a right to see and hear all of the evidence and witnesses

16    presented against you, and you or your counsel, in some cases

17    both, could cross-examine any witness presented by the

18    United States.  Do you understand?

19    A     Yes, Your Honor.

20    Q     At sometime in a trial, if that -- if you decided, you

21    know, or still decided that's what you want, a decision would

22    be made as to whether you will testify or decline to testify.

23    If you said, "No, I don't want to testify," and there are some

24    good reasons not to; there's some good reasons to do it, but

25    if you said, "No, I don't want to," no one, including me,

1    could force you to testify against yourself or to testify at

2    all.  Do you understand?

3    A    Yes, Your Honor.

4    Q    Ordinarily in making a decision whether you would

5    testify, that would occur after talking to your counsel,

6    friends, family members, others, but ultimately the decision

7    is yours as to whether you would testify or not.  Do you

8    understand?

9    A    Yes, Your Honor.

10   Q    You have a right to insist upon the issuance of subpoenas

11   or other compulsory process to compel the attendance at a

12   trial of any witness you identify as helpful to your case.  Do

13   you know of the identity or existence of any witness or

14   witnesses that you think might be helpful to your case that

15   have not yet been contacted but that you think should be

16   contacted before we proceed any further today?

17   A    No, Your Honor.

18   Q    Do you understand that by entering a plea of guilty, if

19   you decide to do that and if your plea is accepted by me, you

20   will be found guilty and there will be no further trial of

21   your case and you will waive or have given up your right to a

22   trial as well as the other rights associated with a trial that

23   I've just described?

24   A    Yes, Your Honor.

25   Q    I'm going to ask Mr. Sauer to state or read into the

1   record facts he believes he could prove if called upon to do

2   so at a trial of your case before a judge or a jury.  The

3   purpose is to see if there's a factual basis upon which any

4   conclusion of guilt might rest.

5           There are many reported cases of individuals pleading

6   guilty when they really aren't guilty at all but they do it

7   for some other reason.  So here it's important that there be a

8   factual basis established in the record.

9           Please listen carefully.  When Mr. Sauer has

10  concluded, if there's anything about what he says to which you

11  disagree or if he fails to include facts that you think are

12  important, then speak up and we'll take that matter up on the

13  record.

14          Mr. Sauer?

15          MR. SAUER:  Thank you, Your Honor.

16          The parties agree that the facts in this case are as

17  follows, and the Government would prove these facts beyond a

18  reasonable double in the event the case were to go to trial.

19          On January 11th, 2012, the Defendant,

20  Alireza Bakhtiari, also known as Al Bakt, was a pro se

21  plaintiff who was prosecuting a civil lawsuit pending before a

22  federal judge in the United States District Court for the

23  Eastern District of Missouri.  This lawsuit was a, quote,

24  "official proceeding."

25          The Defendant's opponent in the civil litigation was

1   represented by a St. Louis attorney, B.H.  B.H. was seeking to

2   enforce discovery orders that might have led to disclosures

3   that would have been damaging to Bakhtiari.

4          On January 11th, 2012, while in the Eastern District

5   of Missouri, the Defendant intentionally accessed the website

6   of a wedding photographer located in the State of Florida.

7   From the wedding photographer's website, the Defendant

8   downloaded photographs from the recent wedding of the son and

9   daughter-in-law of B.H.  Two of the wedding photographs were

10  then doctored and altered to impose rifle crosshair graphics

11  on the faces of B.H.'s son and daughter-in-law.

12         On January 15th, 2012, the Defendant caused an

13  anonymous e-mail to be sent to B.H.  In an attempt to render

14  the e-mail untraceable, the e-mail was sent through a wireless

15  Internet router located at a motel off a highway in rural

16  Missouri using an anonymous web-based e-mail account which was

17  created using the names of B.H's son and daughter-in-law.

18         The e-mail referred to B.H. in obscene and abusive

19  terms.  Attached to the anonymous e-mail were three pictures

20  of B.H.'s home, using the name of B.H.'s wife in the file

21  names:  A picture of a young girl whom the Defendant believed

22  to be B.H.'s daughter and the two pictures from the wedding of

23  B.H.'s son with rifle crosshair graphics superimposed over the

24  faces of B.H.'s son and daughter-in-law.

25         The Defendant caused this e-mail to be sent in an

1  attempt to retaliate against and intimidate B.H. for his

2  actions in the civil lawsuit which included a Motion for

3  Sanctions against the Defendant filed shortly before the

4  e-mail was sent.

5         On January 18th, 2012, the Defendant knowingly

6  displayed a loaded rifle with a scope to one of B.H.'s

7  colleagues and repeatedly referred to the rifle as, quote,

8  "crosshair" in ominous terms.  The Defendant took these

9  actions with an improper purpose and to engage in conduct

10  knowingly and dishonestly with the specific intent to subvert,

11  impede or obstruct the official proceeding.

12         The Defendant intended the natural and probable

13  consequence of these actions; i.e., that the attorney

14  defending against his pro se lawsuit would be frightened,

15  intimidated and chilled in his advocacy against the Defendant,

16  and potentially deter him from discovering evidence that the

17  Defendant had full -- evidence that the Defendant had forged

18  the documents on which the lawsuit was based, thus interfering

19  with the due administration of justice.

20         Prior to these events, the Defendant had filed two

21  pro se defamation lawsuits against B.H.'s client in the U.S.

22  District Court for the Eastern District of Missouri.  In these

23  lawsuits, the Defendant claimed that B.H.'s client wrote,

24  quote, "maliciously defamatory letters" against him to local

25  news agencies, accusing the Defendant of being involved in

1   interstate sex trafficking.

2         The case numbers of these two lawsuits were

3   4:10-CV-1856(SNLJ) and No. 4:11-CV-971(SNLJ).

4         The Defendant knew that the "maliciously defamatory

5   letters" on which these lawsuits were based were not authored

6   by the defendants in his civil case and that the factual

7   claims he made in these lawsuits were false.

8         On May 29th, 2012, the Defendant attempted to file a

9   motion in the instant criminal case entitled "Defendant's

10  Motion To Dismiss Indictment Based On Government Misconduct."

11  A copy of this motion, with memorandum and supporting

12  affidavits, was e-mailed to the undersigned attorney for the

13  United States.  In this motion and accompanying memorandum and

14  affidavits, the Defendant alleged that federal agents had

15  engaged in, quote, "outrageous government misconduct" by

16  subjecting himself and his wife to hours of, quote, "torture"

17  and, quote, "sexual abuse" during the execution of a search

18  warrant at his house on March 21st, 2012.  Among other things,

19  he alleged that the federal agents handcuffed him and his wife

20  to furniture while they were both fully nude, and engaged in

21  abusive behavior towards him -- towards them.  These

22  allegations were false.  The Defendant admits that the factual

23  allegations in this motion and in the accompanying affidavits

24  were false and that he made these allegations for the sole

25  purpose of trying to retaliate against federal officers and

1    corruptly influence the proceedings in his criminal case.

2              THE COURT:  All right.

3    Q    (By The Court)  Do you have any disagreement with any of

4    those statements that you would like to state on the record at

5    this time?

6    A    No, Your Honor.

7    Q    I have before me a document that's called "Guilty Plea

8    Agreement."  I'm going to ask that it be produced to see if

9    your signature appears on the signature page which is Page ---

10             THE COURT:  What is that page, Melanie?

11             THE CLERK:  13.

12             THE COURT:  13?  Okay.

13   Q    (By The Court)  Is that your signature?

14   A    Yes, Your Honor.

15   Q    You're the only one in my 17 years who knows how to run

16   that microphone.  Everybody else seems to move away from it.

17   Thank you.  That's very helpful.  The court reporter will give

18   you a gold star for that.  Thank you, sir.

19             I want to cover some of the documents -- some of the

20   information in more detail than others.

21             On the first page it states that if you enter a plea

22   of guilty to Count II, the United States agrees to move for

23   dismissal of Count I at the time of sentencing and, further,

24   that there will be no further federal prosecution brought in

25   this district relative to your causing an anonymous e-mail to

1    be sent threatening the son and daughter-in-law of a St. Louis

2    attorney on or around January 15, 2012, of which the

3    United States is aware at this time.

4         In addition, in exchange for your admission under

5    oath that this defamation -- that your defamation lawsuits in

6    the Eastern District of Missouri, Case No. 4:10-CV-1856(SNLJ)

7    and 4:11-CV-971(SNLJ), were based on false allegations, the

8    United States agrees that you will not be criminally charged

9    with fraud or obstruction of justice on the basis of those

10   actions.

11        Additionally, in exchange for your admission under

12   oath that your allegations of "outrageous Government

13   misconduct" made on May 29th, 2012 are false, the

14   United States agrees that you will not be criminally charged

15   with perjury, false statements, and obstruction -- or

16   obstruction of justice on the basis of these allegations.

17        In addition, the parties agree that the *United States*

18   *Sentencing Guidelines* Total Offense Level analysis agreed to

19   by the parties is the result of negotiation and led, in part,

20   to the guilty plea, if one is made, and that hasn't happened

21   yet.

22        The parties further agree that because either party

23   may request a sentence above or below the *United States*

24   *Sentencing Guidelines* range, then in parentheses, "combination

25   of Total Offense Level and Criminal History Category," closed

1    parentheses, ultimately determined by the Court pursuant to

2    any chapter of the *Guidelines*, Title 18, United States Code

3    3553(a) or any other provision or rule of law not addressed

4    herein, provided that such request is made in writing at least

5    ten days in advance of sentencing.

6           Is that language which I read word for word out of

7    the Plea Agreement an accurate statement of what has been

8    agreed?  Is that accurate?

9    A    Yes, Your Honor.

10   Q    Okay.  The *United States Sentencing Guidelines* were

11   passed back in 1984 but something happened on January 12th,

12   2005, when the United States Supreme Court said they were, in

13   part, unconstitutional.  And what happened was that from and

14   after that date, the *Guidelines* may only be applied in an

15   advisory manner.  They're not mandatory like they used to --

16   like they were at one time.  However, I'm still required to

17   make calculations under the *Guidelines*, to arrive at a

18   sentencing range and to consider that range along with other

19   factors.

20          The 2011 Guideline Manual was used in this case to

21   make recommendations.  The -- Oh, go ahead.

22          The Base Offense Level is 14 as provided in 2J1.2(a).

23   The specific offense characteristics, eight levels will be

24   added under 2J1.2(b)(1)(D) because the offense involved

25   threatening to cause physical injury to a person in order to

1    obstruct the administration of justice, and two levels will be

2    added under 2J1.2(b)(3)(C) because the offense was extensive

3    in scope or in preparation.  The Defendant does not concede

4    that these enhancements apply, and the parties agree to leave

5    the matter open for dispute at sentencing.

6           So is that true of both the eight levels and the two

7    levels?

8           MR. SAUER:  That is correct, Your Honor.

9           THE COURT:  Both?  So I -- Today, those are open for

10   sentencing at the time -- or open for argument at the time of

11   sentencing.  Is that right?

12          MS. SMITH:  Yes, Your Honor.  And my client also had

13   a number of other issues that he's raised since then,

14   including a minor role --

15          THE COURT:  Okay.

16          MS. SMITH:  -- reduction and also a reduction based

17   on substantial assistance to the Government --

18          THE COURT:  Okay.

19          MS. SMITH:  -- without a Government motion which

20   are -- they will also be left up for ---

21          THE COURT:  Okay.

22          MS. SMITH:  They're not contained in the Plea

23   Agreement because those are issues that my client has

24   subsequently studied --

25          THE COURT:  Okay.

1          MS. SMITH:  -- from the *Sentencing Guidelines*, and he

2    wants that to be raised at sentencing.  So there are four

3    issues now, Your Honor, open at sentencing.

4          THE DEFENDANT:  Actually five issues, Your Honor.

5          MS. SMITH:  No.  You're getting that.

6          THE DEFENDANT:  Your Honor, there are five issues --

7          THE COURT:  Okay.

8          THE DEFENDANT:  -- that are still under dispute as

9    far as calculating the offense level.

10         THE COURT:  Okay.  Okay.  Now -- So that since these

11   haven't been disclosed in the Agreement, you understand,

12   Mr. Sauer, the nature of those.  And is it fair to say that

13   you will be prepared to take those up at sentencing even

14   though they're not disclosed in the Plea Agreement?

15         MR. SAUER:  Yes, Your Honor.  The only thing that's

16   agreed to as far as the *Guidelines* calculation by agreement is

17   the Base Offense Level of 14.  Beyond that, the parties leave

18   or everything is left open to further dispute at sentencing at

19   this time.

20         THE COURT:  Okay.  However, I assume acceptance of

21   responsibility is agreed.

22         MR. SAUER:  That is agreed, Your Honor.

23         THE COURT:  Okay.  So, for example, since the Base

24   Offense Level is 14, in the event and assuming for argument

25   that the Defendant would win on all of his points, then there

1   would only be a two-level reduction for acceptance of

2   responsibility because it would be less than 16.  Is that

3   correct?

4           MR. SAUER:  That is correct, Your Honor.

5           THE COURT:  Okay.  Okay.

6           MS. SMITH:  And, Your Honor, if I may for purposes of

7   the record, the fifth issue that my client just enunciated as

8   being at issue is the three-level reduction for acceptance of

9   responsibility.  But, of course, our Plea Agreement already

10  agrees that he will be given that, barring any ---

11          THE COURT:  Okay.  Okay.  But it's clear -- I want to

12  make it absolutely clear:  The law says that if the Total

13  Offense Level is less than 16, you can't get three.  You can

14  only get two.

15          MS. SMITH:  Yes, sir.  We understand that.

16          THE COURT:  But it's still a matter of argument,

17  okay.  All right.  And there are -- there are no other

18  adjustments other than what's been spread on the record under

19  either Chapter 2 or 3.  Is that accurate?

20          MS. SMITH:  That's accurate, Your Honor.

21          THE COURT:  And if -- And if he loses on all of those

22  points, then the Total Offense Level will be no greater than

23  21.  Is that accurate?

24          MS. SMITH:  Yes, Your Honor.

25          THE COURT:  Okay.  All right.  Have you explained to

1    your client the -- his rights to appeal under Title 18, United

2    States Code, Section 3742?

3              THE DEFENDANT:  Yes, Your Honor, she has.

4              THE COURT:  Okay.

5              MS. SMITH:  I apologize, Your Honor.  I didn't hear

6    the question.

7              THE COURT:  Okay.

8              MS. SMITH:  I was looking ---

9              THE COURT:  Have you explained your client's right to

10   appeal under Title 18, United States Code, 3742?

11             MS. SMITH:  Yes, sir.

12             THE COURT:  The parties waive all rights to appeal

13   all nonjurisdictional, nonsentencing issues, including, but

14   not limited to, any issues relating to pretrial motions,

15   discovery, and the guilty plea.  The Defendant retains the

16   right to appeal issues left open for dispute at Defendant's

17   sentencing.

18             The Defendant agrees to waive all rights to contest

19   the conviction or sentence in any post-conviction proceeding,

20   including one under Title 28, United States Code, Section

21   2255.  However, he does retain the right to appeal based on

22   claims of prosecutorial misconduct or ineffective assistance

23   of counsel.

24             Is that an accurate recitation?

25             MS. SMITH:  Yes, Your Honor.  There's -- May I -- May

1    I interject another issue --

2            THE COURT:  Sure.

3            MS. SMITH:  -- at this point?  I know this is getting

4    a little off our normal routine for taking a change of plea,

5    but you -- you asked my client, Your Honor, whether he was

6    satisfied with my assistance, and there is pending now a

7    Motion to Dismiss me as his attorney, and I don't know if the

8    Court has seen it or not.  My client and I both agreed that we

9    would proceed with this Change of Plea, --

10           THE COURT:  Okay.

11           MS. SMITH:  -- either take up that motion where he's

12   trying to fire me after the Change of Plea or in front of

13   Judge Buckles where we have a bond modification hearing at

14   1:00.

15           THE COURT:  Okay.

16           MS. SMITH:  But in either event, Your Honor, I want

17   you to understand that even though it's on the record, he and

18   I have agreed to proceed with this Change of Plea.

19           THE COURT:  Okay.

20           MS. SMITH:  And there's been some disagreement,

21   Your Honor, but I don't think he's entirely dissatisfied with

22   my representation --

23           THE COURT:  Okay.  All right.

24           MS. SMITH:  -- but he is satisfied through the plea

25   negotiation and plea entering as far as today.

1          THE COURT:  Okay.  All right.

2          MS. SMITH:  Thank you, Your Honor.

3          THE COURT:  Yeah, I would leave that to the attention

4    of Judge Buckles.

5          MS. SMITH:  Yes, sir.

6          THE COURT:  Okay.  All right.

7    Q    (By The Court)  Has anyone suggested to you that it is

8    permissible not to tell the truth in this or in any other

9    judicial proceeding associated with this case?

10   A    No, Your Honor.

11   Q    Are you aware that the offenses -- the -- It will be only

12   one offense if the United States dismisses Count I; that the

13   offense charged in the information is a felony offense and if

14   you enter a plea of guilty -- Actually you'll be pleading

15   guilty to both Counts, I guess, and then Count -- Count I

16   would be dismissed at the time of sentencing.

17         THE COURT:  Is that correct, Mr. Sauer?

18         MR. SAUER:  That's correct, Judge.

19         THE COURT:  Okay.

20   Q    (By The Court)  Do you understand that the offenses

21   charged in the information are felony offenses, and if you

22   enter pleas of guilty and if your pleas are accepted, you will

23   be found guilty and that such findings will deprive you of

24   valuable civil rights, such as the right to vote, the right to

25   hold public office, the right to serve as a juror, and the

1    right to possess any kind of a firearm?

2    A    Yes, Your Honor.

3          THE COURT:  What is the range of punishment in this

4    case, Mr. Sauer?

5          MR. SAUER:  Your Honor, the range of punishment in

6    this case is a term of imprisonment of not more than 20 years,

7    a fine of not more than $250,000, or both such imprisonment

8    and a fine.  The Court may also impose a period of supervised

9    release of not more than three years, and there would be a

10   $100 special assessment.

11         THE COURT:  Okay.

12   Q    (By The Court)  Do you understand the range of

13   punishment?

14   A    Yes, Your Honor.

15   Q    I want to talk about a couple of things.  One of the

16   most -- Well, one thing about supervised release.  If

17   you're -- If a prison sentence is imposed against you and

18   if -- if there is a prison sentence imposed against you, there

19   would also be a provision for supervised release.  A lot of

20   people, I have learned over the course of years, believe that

21   once they're released from the Department of Corrections, that

22   that satisfies their obligation, and actually that's not true.

23   Supervised release goes on.  In this case it would be no more

24   than three years, but there are all kinds of conditions.

25         You have to meet with the Probation Officer.  You

1    must be employed.  You cannot use, sell or distribute drugs.

2    That would not be an issue in your case but, still, that would

3    be a condition.

4            There's just a lot of conditions.  It's not easy, and

5    if a Probation Officer decided that you had violated a term or

6    terms of your supervised release, the officer then would ask

7    for a hearing date.  The United States Attorney would present

8    evidence that you had violated a term or terms of your

9    supervised release.  And if a judge hearing the case decided

10   not beyond a reasonable doubt but by a lesser standard, proof

11   by the greater weight of the evidence that you had violated a

12   term or terms of your supervised release, you actually could

13   go back and serve a second term of imprisonment in addition to

14   the term you already served.

15           Do you understand how that mechanism works?

16   A    Yes, Your Honor.

17   Q    Okay.  As I've stated, the *Sentencing Guidelines* are

18   advisory, and I will consider them as advisory and not

19   mandatory at the time of sentencing.

20           I'll consider the impact of the parties' Plea

21   Agreement on any sentencing issue.  I'll hear evidence that

22   the United States or you want to present at the time of

23   sentencing.  And I understand fully in this case there likely

24   will be evidence to be heard at the time of sentencing.

25           In that regard, I -- I am not -- I don't want to hear

1    your motion today.  I want Judge Buckles to hear it, but I do

2    want you to know, sir, that at that sentencing hearing, it

3    works so much better for someone to be there to ask you

4    questions that you've already worked out in advance.  If

5    you're representing yourself, you have to get up there and

6    say -- you ask yourself a question.  It's kind of a silly

7    process, but it's more advantageous, in my view to you, that

8    someone represents you or be available to help you.

9         I shall consider statements of the United States

10   Attorney and of your counsel or, if you're not represented by

11   counsel, you.  And certainly, in any event I'll hear from you

12   at the time of sentencing.  I'll hear whatever you want to

13   say.

14        I'll consider whether there should be any departure

15   under the *Guidelines*.  Then I'll look at all the factors in

16   18, United States Code, 3553(a) to decide whether to impose a

17   *Guideline* sentence or a *non-Guideline* sentence.

18        Those factors include the nature and circumstances of

19   the offense and your history and characteristics.  It also

20   includes the need for the sentence imposed to reflect the

21   seriousness of the offense, to promote respect for the law,

22   and to provide just punishment for the offense.

23        It needs to provide you with needed -- or you won't

24   need educational help.  That's for sure, but any other

25   vocational or any other correctional treatment that might be

 1   available, whatever that might be, would -- could conceivably

 2   be beneficial.

 3          I'll consider all kinds of sentences available and

 4   the need to avoid sentencing disparity among similarly

 5   situated defendants facing similarly situated offenses.

 6          I will be unable to determine the applicable

 7   guideline range, as you know, for your case until after the

 8   Presentence Report has been prepared, received and read by

 9   you, and you and Ms. Smith or you alone will have an

10   opportunity to read and review the Presentence Report.  After

11   receiving and reading the report, you will have an opportunity

12   to file objections to the report challenging the application

13   of any of the *Guidelines*.

14          Do you understand, also, that parole has been

15   abolished in the federal system, so if you're not sentenced --

16   so if you are sentenced, you will not be placed on parole and,

17   further, any sentence you may receive may be greater than you

18   anticipate or expect?  Do you understand those propositions?

19   A    Yes, Your Honor.

20   Q    Okay.  Well, I appreciate your courtesy today.  You've

21   been very polite and responsible -- strike that -- respectful.

22   You've answered all of my questions quite responsively.  This,

23   obviously, indicates, in part, a high level of intellectual

24   functioning.

25          I've asked you a number of questions, and now I'm

 1   about to ask the most important question which has to do with

 2   whether you're going to enter a plea of guilty in this case.

 3   Because it's so important, I want you to step back from the

 4   microphone and have at least a brief conversation with

 5   Ms. Smith before you answer it just in case you have any

 6   lingering questions before you answer that question.

 7           So please talk to her after I read this before you

 8   answer it.  Tell me, after you talk to her, what plea you

 9   intend to enter today, sir.  Will you be entering a plea of

10   guilty?  Will you be maintaining your plea of not guilty, or

11   do you want to enter some other plea?

12           (Pause)

13   A    Thank you, Your Honor.

14   Q    Yes, sir.  And what plea will you be making, sir?

15   A    I plead guilty to Count II, Your Honor, impeding a

16   judicial proceeding under the United States Code of 18 USC

17   1512(2)(c).

18   Q    Okay.

19   A    (c)(2).

20   Q    Okay.  And what about Count I?

21   A    Count I, I do not plead guilty to.

22   Q    Okay.

23   A    And Mr. Sauer has made a commitment already that he will

24   dismiss that Count.  And I want the record to reflect that per

25   our agreement, I've pleaded guilty to Count II, contingent

```
 1   upon him holding upon his end of the Agreement.

 2   Q    All right.

 3              THE COURT:  Mr. Sauer?

 4              MR. SAUER:  That is correct, Your Honor.  In exchange

 5   for his guilty plea to Count II, the Government agrees to

 6   dismiss Count I at the time of sentencing.

 7              THE COURT:  All right, very well.  So I will proceed

 8   on that premise.

 9   Q    (By The Court)  Have you understood all the questions I

10   asked you here today, sir?

11   A    Yes, Your Honor.

12   Q    Have you answered all of them truthfully and honestly?

13   A    Yes, Your Honor.

14   Q    Do you have any questions to ask me at this time?

15   A    Yes, Your Honor.  I have one question --

16   Q    Go ahead.

17   A    -- in regards to ---

18   Q    Yes.  Go ahead.

19   A    Well, it's my understanding that there will be a

20   presentencing report to which I will have an opportunity to

21   file objections after that.

22   Q    That's correct.

23   A    And then there will be about ten days prior to the

24   sentencing date our sentencing brief.

25   Q    Yes.
```

```
 1   A     And my concern is that due to the illusive language or

 2   noncertain language that may be raised from the Plea Agreement

 3   in the sentencing motion, Mr. Sauer may become angered and

 4   proclaim that he will have to assert his Count I or he will

 5   have to take away the two-level reduction that we talked

 6   about.  I'm not clear at this point if we can basically

 7   stipulate to those at this point on the record or not.

 8         THE COURT:  You know, you really can't stipulate as

 9   to, you know, unknown facts.  What you need -- What will

10   happen is you will get the Presentence Report.  You will read

11   it.  And whether you're representing yourself or with

12   assistance of counsel, then you will plan on your approach at

13   the sentencing hearing how you want to present your evidence

14   and which points you want to raise.

15         I already know that there are at least -- well, there

16   are several arguments that are going to be made concerning the

17   accumulation of any points beyond 14.  And I -- The only time

18   I -- And I can't -- I can't -- I can't predict what will

19   happen, but I can tell you that it is rare that -- maybe

20   nonexistent when a U.S. Attorney will take action that is

21   inconsistent with the Plea Agreement.  You mentioned that you

22   believe that there's language in the Plea Agreement which

23   might permit him to argue in a certain way and to reimpose

24   Count I and to deny you your points for -- for acceptance of

25   responsibility.  There have been instances where someone --
```

1    where that's happened where the person demonstrates to the

2    Court that they really aren't guilty and they're really not

3    pleading guilty, and they're really -- You know, when that

4    happens, then -- then you do face that option, but there's no

5    way for me to do that today.

6    A       Thank you, Your Honor.

7    Q       Do you understand?

8    A       Yes, Your Honor.

9    Q       Okay.

10            THE COURT:  Well, all right.  The Court finds that in

11   the case of the *United States of America versus*

12   *Alireza Bakhtiari*, Case No. is 4:12-CR-00097(ERW), that he is

13   fully competent and capable of entering an informed plea on

14   Count II; that he is aware of the nature of the charge and the

15   consequences of his plea; that his plea of guilty under Count

16   II is a knowing and voluntary plea made willingly and

17   intelligently, supported by an independent factual basis

18   containing each of the essential elements of that offense.

19   The plea as to Count II is accepted, and Defendant is found to

20   be guilty as charged under Count II.

21            A written Presentence Report shall be prepared by the

22   Probation Office to assist me in sentencing.  You will be

23   asked to give information for the report, and Ms. Smith will

24   be present, if you wish.  It is important that counsel be

25   present when questions are asked by the Probation Officer and

1    answered by you.

2         And let me tell you why that is.  If you make a

3    statement, it's an admission.  Your attorney can make

4    arguments all day, and that will not be held against you.  But

5    I have seen many instances where someone believes that they

6    want to do that on their own and they end up making statements

7    that, when later they come back, that are very damaging to

8    them.  So it's very important that you have counsel present

9    when you talk to the Probation Officer.  Do you understand?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Okay.  You and Ms. Smith will have an

12   opportunity to read the Presentence Report and file objections

13   to the report before the sentencing hearing.  You and she will

14   be given an opportunity to speak on your behalf at the

15   sentence hearing to present testimony or exhibits or other

16   evidence in mitigation or reduction of your sentence and, in

17   this case, to raise issues under the *United States Sentencing*

18   *Guidelines*.

19        You will be referred to a probation officer for a

20   Presentence Investigation Report.

21        The sentencing date in your case, sir, is November

22   1st, 2012, at 9:00 AM.  November 1st, 2012, at 9:00 AM.

23        THE DEFENDANT:  Yes, Your Honor.  Thank you.

24        THE COURT:  Yes, sir.  Thank you.

25        If nothing further, Court's in recess.

1          MS. SMITH:  Thank you, Your Honor.

2          MR. SAUER:  Thank you, Your Honor.

3          THE COURT:  You're welcome.

4          (Hearing adjourned at 12:00 noon.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

        I, Deborah A. Kriegshauser, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

        I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

        I further certify that this transcript contains pages 1 through 39 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

        Dated at St. Louis, Missouri, this 10th day of December, 2012.


                    _____

                    /s/ Deborah A. Kriegshauser

             DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR

                     Official Court Reporter