UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALIREZA BAKHTIARI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )   Case No.   4:24-cv-01132-MTS |
| | )   Case No.   4:12-cr-00097-MTS |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

Before the Court is Petitioner Alireza Bakhtiari's Petition for Writ of Error *Coram Nobis*.  After a complete review of the Petition, the United States of America's Response, and Petitioner's Reply thereto, the Court will deny the Petition.  Not only has Bakhtiari waived his right to seek *coram nobis* relief, but such relief is neither necessary nor appropriate here.  *See Carlisle v. United States*, 517 U.S. 416, 429 (1996) (remarking that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate").

**I.   Background**

On August 6, 2012, Petitioner Alireza Bakhtiari pleaded guilty in this Court to a single violation of 18 U.S.C. § 1512(c)(2), which prohibits obstructing, influencing, or impeding any official proceeding or attempting to do so.  *See United States v. Bakhtiari*, 4:12-cr-00097, ECF No. 87 (E.D. Mo.) (minute entry).  The Court later sentenced Bakhtiari to fifty-one months' imprisonment and three years of supervised release.  *Id.* at ECF No. 132.  A unanimous panel of the U.S. Court of Appeals for the Eighth Circuit

affirmed Bakhtiari's sentence on direct appeal. *United States v. Bakhtiari*, 714 F.3d 1057, 1063 (8th Cir. 2013) (per curiam).

Bakhtiari then sought post-conviction relief under 28 U.S.C. § 2255, which this Court denied while also declining to provide Bakhtiari a certificate of appealability. *Bakhtiari v. United States*, 4:13-cv-01344-ERW, 2014 WL 1213241 (E.D. Mo. Mar. 24, 2014); *see also* 28 U.S.C. § 2253(c). Bakhtiari sought a certificate of appealability from the Eighth Circuit, which a panel of that court unanimously denied. *Bakhtiari v. United States*, No. 14-1695, Entry I.D. 4176063 (8th Cir. July 16, 2014). Bakhtiari then sought rehearing en banc of that denial, and, over no noted dissent, the Eighth Circuit denied his request. *Id.* at Entry I.D. 4193596 (8th Cir. Sept. 5, 2014). In most criminal cases, that would have been the end of the matter. *Cf.* 28 U.S.C. § 2255(h) (placing strict limits on second or successive habeas petitions); *Jones v. Hendrix*, 599 U.S. 465, 477–78 (2023) (explaining that a second or successive collateral attack on a federal sentence is not authorized unless one of two conditions in § 2255(h) is satisfied). But Bakhtiari was undeterred. He next sought a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Pennsylvania, the District in which he had been incarcerated. That court dismissed his petition, *Bakhtiari v. Rectenwald*, 1:16-cv-00116-BR-SPB, 2018 WL 833157, at *3 (W.D. Pa. Feb. 13, 2018), and a unanimous panel of the United States Court of Appeals for the Third Circuit affirmed that dismissal, *Bakhtiari v. Warden McKean FCI*, 738 F. App'x 739, 741 (3d Cir. 2018) (per curiam).

Now, in his latest salvo against his conviction, Bakhtiari seeks a writ of error *coram nobis*. The facts here are not in dispute because Bakhtiari admitted to them in open court and by signing his guilty plea agreement. *See United States v. Bakhtiari*, 4:12-cr-00097, ECF No. 88 (E.D. Mo. Aug. 7, 2012) (hereinafter "Guilty Plea Agreement"). At this point, the underlying facts are well-trodden ground for the federal courts, and this Court will waste no time writing yet another summation of Bakhtiari's sordid actions. Therefore, the Court uses the Eighth Circuit's summation of the facts.

> From 2009 to 2012, B.H., a St. Louis lawyer, defended the same corporate client in three pro se lawsuits brought by Bakhtiari. The first two lawsuits settled. In the third suit, for defamation, B.H. came to suspect that Bakhtiari had forged the allegedly defamatory emails "sent" by B.H.'s client on its letterhead. According to B.H., Bakhtiari sent the emails, which accused Bakhtiari of sex trafficking, in an attempt to manufacture facts which would give rise to a defamation suit. B.H. filed a motion to inspect computer equipment Bakhtiari possessed. The district court granted the motion and ordered Bakhtiari to make his computer equipment available within fourteen days. Bakhtiari did not comply. B.H. then filed a motion for sanctions and contempt against Bakhtiari, informing the court of Bakhtiari's non-compliance.
>
> The next day, B.H. received an email at his work address. The sender was an account opened in his son's and daughter-in-law's names. The email, titled, "Eric and Jamie sitting in a tree," called B.H. offensive terms and included six attached photographs: three of B.H.'s house, two of B.H.'s son and daughter-in-law, in which a rifle cross-hairs had been imposed upon their faces, and one of a young girl who the file name referred to as, but in fact was not, B.H.'s daughter. B.H. was upset. He took the email as an implied threat against his family. He referred the email to the U.S. Attorney's office, and an investigation began.
>
> Three days later, G.F., B.H.'s law partner, went to Bakhtiari's house to inspect the equipment described in the court order. A computer consultant and court reporter joined them. While they were at the house, Bakhtiari drew G.F. into a bedroom, at which time he pulled out a hunting rifle with an affixed scope from under his bed. He opened the bolt action of the rifle, ejected a bullet from the chamber, and asked G.F. if he wanted it.

> G.F. declined and left the room. G.F., who was aware of the email sent to B.H., took the display of the rifle as a message that Bakhtiari had sent the email and was willing to carry out his implied threat.
>
> Authorities continued to investigate. They executed a federal search warrant on Bakhtiari's workplace computer, where they discovered photographs of B.H.'s son and daughter-in-law, with and without the cross-hairs. They also discovered the threatening email had been sent from a server at a hotel in rural Missouri. Bakhtiari's personal cellular phone had "hit" on cell towers near the hotel around the time the email was sent.
>
> A grand jury indicted Bakhtiari for sending a threatening communication in interstate commerce in violation of 18 U.S.C. § 875(c). . . . On May 29, 2012, Bakhtiari [submitted] a "Motion To Dismiss Indictment On The Basis Of Governmental Misconduct." The motion alleged the federal agents who arrested Bakhtiari subjected him and his then-girlfriend to "torture" and "sexual abuse," including shackling them naked to furniture inside Bakhtiari's home. Bakhtiari brought this motion only after he was unable to reach a plea agreement with the government. Several photographs taken during the execution of the search warrant and arrest showed Bakhtiari and his then-girlfriend clothed and seated comfortably.
>
> Government counsel notified Bakhtiari's hybrid counsel that Bakhtiari could be subject to additional charges for perjury, false statements, and obstruction of justice for his false allegations against federal agents. Bakhtiari then pleaded guilty to obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). He swore he had forged the "defamatory" documents in the civil lawsuit B.H. defended, he had caused the threatening email to be sent to B.H., and he had fabricated the "torture" allegations against federal officials. In exchange, the government dropped the threatening communication in interstate commerce charge and declined to bring additional charges. The stipulation of facts in the plea agreement, which included these admissions, was read into the record at the plea colloquy.

*Bakhtiari*, 714 F.3d at 1059–60.

None of these facts to which Bakhtiari admitted have changed. But last year, the Supreme Court announced its opinion in *Fischer v. United States*, 603 U.S. 480 (2024), where it held that to prove a violation of § 1512(c)(2), the Government must establish

that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding, or attempted to do so.  Here, the Government concedes that, after *Fischer*, Bakhtiari's threatening email to B.H. could no longer support a conviction under § 1512(c)(2).  Doc. [12] at 12.  Bakhtiari contends that *coram nobis* relief is therefore warranted and his conviction should be wiped away.  Though it acknowledges *Fischer*'s impact, the Government opposes Bakhtiari's request on multiple grounds.

## II.      Discussion

"The writ of error *coram nobis* is an ancient common law remedy that modern federal courts are authorized to issue under the All Writs Act, 28 U.S.C. § 1651(a)." *Baranski v. United States*, 880 F.3d 951, 954 (8th Cir. 2018).  *Coram nobis*, like habeas corpus, is a collateral attack on a criminal judgment.  *See United States v. Little*, 608 F.2d 296, 299 (8th Cir. 1979); *United States v. Wilkozek*, 822 F.3d 364, 367 (7th Cir. 2016).  But unlike habeas relief, *coram nobis* relief is available when, like here, the petitioner is no longer in custody for the applicable conviction.  *United States v. Camacho-Bordes*, 94 F.3d 1168, 1173 n.6 (8th Cir. 1996).

*Coram nobis* is an "extraordinary remedy" that should be allowed "only under circumstances compelling such action to achieve justice."  *Baranski*, 880 F.3d at 954 (quoting *United States v. Morgan*, 346 U.S. 502, 511 (1954)); *accord Camacho-Bordes*, 94 F.3d at 1173 ("a petitioner must show a compelling basis before coram nobis relief will be granted").  Courts have recognized that a petitioner must make a showing of at least three things to demonstrate an eligibility for relief.  A petitioner must "explain his

- 5 -

failure to seek relief earlier through other means," "must show that he continues to suffer a significant collateral consequence from the judgment being challenged and that issuance of the writ will eliminate this consequence," and "must demonstrate that the judgment resulted from a fundamental error."  *Murray v. United States*, 704 F.3d 23, 29 (1st Cir. 2013); *accord United States v. Delhorno*, 915 F.3d 449, 453 (7th Cir. 2019); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (per curiam).  *See also United States v. Sutherland*, 103 F.4th 200, 210 (4th Cir. 2024), *cert. denied*, No. 24-544, 2025 WL 76485 (U.S. Jan. 13, 2025) (requiring same three showings plus a showing that "a more usual remedy is not available"); *United States v. Chan*, 732 F. App'x 501, 502 (9th Cir. 2018) (mem.) (similar).

Successfully addressing those three prongs, though, does not establish an entitlement or right to *coram nobis* relief.  "In other words, passing the tripartite test is a necessary, but not a sufficient, condition for the issuance of the writ."  *United States v. George*, 676 F.3d 249, 251 (1st Cir. 2012) (Selya, J., for the Court).  Rather, federal courts have "discretion to withhold the remedy where the interests of justice so dictate."  *Id.* at 251; *accord United States v. Rankin*, 1 F. Supp. 2d 445, 453 (E.D. Pa. 1998), *aff'd*, 185 F.3d 863 (3d Cir. 1999); *United States v. Hansen*, 906 F. Supp. 688, 692 (D.D.C. 1995); *cf. Embrey v. United States*, 240 F. App'x 791, 795 (10th Cir. 2007) (Gorsuch, J., for the Court) ("When reviewing on appeal the district court's denial of a petition for writ of *coram nobis*, we review . . . for abuse of discretion the district court's decision to deny the writ."); *Baranski*, 880 F.3d at 954 (concluding "district court did not abuse its

discretion in concluding that no 'fundamental' error warranted issuing an extraordinary writ of error *coram nobis*").

But before even turning to those eligibility factors, or a consideration of whether granting the writ is in the interest of justice, Bakhtiari faces an initial obstacle; his guilty plea waived his ability to seek post-conviction relief. *See* Guilty Plea Agreement at 8 (waiving "all rights to contest the conviction or sentence in any post-conviction proceeding"). It is settled law in this circuit that such a waiver is generally enforceable. *See United States v. His Law*, 85 F.3d 379, 379 (8th Cir. 1996) (per curiam); *see also DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000) (explaining that there is "no question in this circuit that a knowing and voluntary waiver of direct-appeal rights is generally enforceable," and that as a "general rule," there is "no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context"). Like many things in the law, though, "waivers are not absolute." *DeRoo*, 223 F.3d at 923.

Even when a defendant knowingly and voluntarily waives a right to appeal or collaterally attack a sentence, the Eighth Circuit will "refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice." *United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003) (en banc); *accord United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016).[1] Federal courts have held that a proper showing of "actual

---

[1] *But see Rudolph v. United States*, 92 F.4th 1038, 1048–49 (11th Cir. 2024) (declining to recognize a miscarriage-of-justice exception to appeal waivers); *United States v. Ford*, 688 F. App'x 309 (5th Cir. 2017) (per curiam) (noting the Court of Appeals for the Fifth Circuit has

- 7 -

innocence" constitutes a miscarriage of justice in the context of waiver. *See Adams*, 814 F.3d at 182; *see also United States v. Gil-Quezada*, 445 F.3d 33, 37 (1st Cir. 2006) ("The miscarriage of justice exception requires a strong showing of innocence, unfairness, or the like."). The Court therefore will examine whether Bakhtiari is actually innocent to determine whether it will enforce his otherwise valid waiver.

In this context, the phrase *actual innocence* refers to "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994) (distinguishing between "legal innocence" and "actual" or "factual" innocence); *Innocence*, *Black's Law Dictionary* (12th ed. 2024) (defining "actual innocence" as the "absence of facts that are prerequisites for the sentence given to a defendant"). Even if retroactively applying *Fischer* makes Bakhtiari actually innocent of the precise § 1512(c)(2) violation to which he pleaded guilty, Bakhtiari has not demonstrated his actual innocence because of the criminal conduct to which he admitted. The Supreme Court has explained that "where the Government has forgone more serious charges in the course of plea bargaining," like here, a "petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 623. Bakhtiari cannot make that showing.

Besides the conduct that underpinned his § 1512(c)(2) conviction—causing the threatening email to be sent to B.H.—Bakhtiari also "swore he had forged the 'defamatory' documents in the civil lawsuit B.H. defended." *See Bakhtiari*, 714 F.3d at

---

"not adopted [a miscarriage of justice] exception to the enforcement of appeal waivers and ha[s] ruled that claims waived in an enforceable appeal waiver need not be considered").

1060.  This submission of forged documents in his federal civil action could support a conviction under § 1512(c)(2), even post-*Fischer*.  The Government also forwent prosecution for numerous other charges that it could have brought against Bakhtiari for the conduct that he, in open court, swore he committed.  *See Bakhtiari*, 714 F.3d at 1060 (noting that, in exchange for Bakhtiari's guilty plea, "the government dropped the threatening communication in interstate commerce charge and declined to bring additional charges").  For example, Bakhtiari admitted that he "caus[ed] an anonymous email to be sent threatening to kill" individuals.  *See* Guilty Plea Agreement at 1–2.  Section 875 of Title 18 criminalizes the transmission of a communication in interstate commerce containing any threat to injure the person of another.  And while Bakhtiari makes much of the fact that he admitted only to *causing* the email to be sent—not *sending* the email—that argument gets him nowhere.  Section 2 of Title 18 "provides that one who causes any act to be done may be punished as a principal." *United States v. Hall*, 979 F.2d 320, 323 (3d Cir. 1992) (citing 18 U.S.C. § 2(b)) (joined by Lay, J.); *accord Cleaver v. United States*, 238 F.2d 766, 770 (10th Cir. 1956) (noting "one who causes an act to be done, aids, abets, induces or procures its commission is properly prosecuted as a principal" (citing 18 U.S.C. § 2)).

Bakhtiari also swore that he fabricated the torture allegations he made against federal officials in a motion, with accompanying affidavits, that he attempted to file with the Court in his underlying criminal case.  *See Bakhtiari*, 714 F.3d at 1060; *see also* Guilty Plea Agreement at 5 ("The defendant admits that the factual allegations in this motion and accompanying affidavits were false, and that he made [them] for the sole

purpose of trying to retaliate against federal officers and corruptly influence the proceedings in his criminal case."). Federal law prohibits perjury and related false statements. *See* 18 U.S.C. §§ 1621, 1623; *see also id.* § 1349 (providing that an attempt to commit an offense subjects an individual to the same penalties as those prescribed for the offense). In sum, Bakhtiari simply cannot show actual innocence. Thus, the Court's "conclusion that the collateral-attack waiver bars [this Petition] would not cause a miscarriage of justice" even if actual innocence constitutes one. *See King v. United States*, 41 F.4th 1363, 1372 (11th Cir. 2022) (Anderson, J., concurring) (finding miscarriage-of-justice exception would not apply even if the court adopted such an exception because petitioner failed to show actual innocence); *see also United States v. Winberg*, 786 F. App'x 753, 758–59 (10th Cir. 2019) (declining to reach issue of whether actual innocence satisfied "miscarriage of justice" exception because innocence claim lacked merit). The Court enforces the waiver and therefore will deny Bakhtiari's Petition for this reason.

To be sure, other reasons exist to deny this Petition. Consequently, even if the Court could disregard his waiver, Bakhtiari would not get far; he has failed to show at least one of the prongs required to establish his eligibility for *coram nobis* relief. Bakhtiari has not shown any "present" or "continuing adverse consequences" from his conviction sufficient to justify this extraordinary remedy. *See Stewart v. United States*, 446 F.2d 42, 43–44 (8th Cir. 1971) (per curiam); *accord Hager v. United States*, 993 F.2d 4, 5 (1st Cir. 1993) (Breyer, C.J., for the Court) (requiring "a showing that the petitioner continues to suffer significant collateral consequences from the judgment"). Bakhtiari

states that "immigration authorities voided his permanent residence status and replaced it with . . . protection per United States' obligations under The Nation's Convention Against Torture." Doc. [1] at 6. Besides offering no support whatsoever for his contention that immigration officials revoked his permanent residence status because of the conviction at issue,[2] Bakhtiari has not shown this change amounts to a continuing adverse consequence even if the change were based on the conviction at issue. *See Kandiel v. United States*, 964 F.2d 794, 797 (8th Cir. 1992) (per curiam) ("[T]he movant must articulate the . . . compelling circumstances for relief in the application for *coram nobis*.").

Bakhtiari has not, in any way, shown that he faces "deportation consequences" or the "risk of removal" because of this conviction. *See Gonzalez v. United States*, 981 F.3d 845, 852 (11th Cir. 2020). In fact, his very own words demonstrate that he still enjoys immigration "protection" against removal. Doc. [1] at 6; *cf.* 8 C.F.R. §§ 1208.16(c), 1208.17(a) (providing for the withholding and deferral of removal for otherwise-removable aliens under the Convention Against Torture).[3] Thus, Bakhtiari has not shown that he suffers significant collateral consequences from his conviction. *See* Brian M.

---

[2] A single criminal conviction does not necessarily trigger removal. *See* 8 U.S.C. § 1227(a)(2); *see also, e.g.*, *Bobadilla v. Holder*, 679 F.3d 1052, 1052–53 (8th Cir. 2012). Therefore, Bakhtiari's unadorned and unsupported representation to the Court is unpersuasive—especially considering his history of deceitfulness to this Court.

[3] It is ironic that the United States' participation in the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment is what keeps Bakhtiari from being removed from the Country considering that he falsely accused federal agents of subjecting him and his wife to hours of "torture" and "sexual abuse." Guilty Plea Agreement at 5. Not only did he later admit to the falsity of these accusations, *id.*, multiple photographs blatantly contradicted the accusations, *Bakhtiari*, 714 F.3d at 1060.

Hoffstadt, *Common-Law Writs and Federal Common Lawmaking on Collateral Review*, 96 Nw. U. L. Rev. 1413, 1491 (2002) (explaining "coram nobis should be available only for those persons facing imminent concrete harm as a result of their infirm conviction"). He therefore has not shown eligibility for *coram nobis* relief. *See United States v. De Castro*, 49 F.4th 836, 842 (3d Cir. 2022) ("A petitioner may seek a writ of error coram nobis to challenge his federal conviction when he . . . still faces consequences from his conviction.").

Bakhtiari also faces a more fundamental problem, the interests of justice counsel against granting him *coram nobis* relief. *See George*, 676 F.3d at 251. The Court finds it remarkably ironic that Bakhtiari seeks to impress upon this Court's sense of due justice after his having worked so diligently in the past to frustrate its dispensation in other cases. He petitions for an extraordinary remedy, one rooted in the concept of justice, from the very Court whose scales of justice he once thumbed. Bakhtiari has wholly failed to convince the Court that, after all his admitted unjust conduct, wiping away his conviction is required to achieve justice. *See Kandiel*, 964 F.2d at 797 (denying relief where petitioner "failed to show that *coram nobis* relief is required to achieve justice"); *see also United States v. Mandanici*, 205 F.3d 519, 532 (2d Cir. 2000) (Kearse, J., concurring) (concurring in majority's conclusions that district court properly denied *coram nobis* relief but writing separately to add that such relief also would have been "inappropriate" given that it was not "necessary to 'achieve justice'"). The Court therefore would exercise its discretion to withhold the remedy here even if Bakhtiari had

not waived his collateral-attack rights and had otherwise demonstrated his eligibility for *coram nobis* relief.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Alireza Bakhtiari's Petition for Writ of Error *Coram Nobis* is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is respectfully directed to file a copy of this Memorandum and Order in Bakhtiari's underlying criminal case, *United States v. Bakhtiari*, 4:12-cr-00097-MTS.[4]

A separate Judgment will be entered herewith.[5]

Dated this 25th day of March 2025.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[4] *See Baranski*, 880 F.3d at 954 ("As applied in criminal cases, *coram nobis* 'is a step in the criminal case and not, like habeas corpus . . . the beginning of a separate civil proceeding.'" (quoting *Morgan*, 346 U.S. at 511)); *see also United States v. Wilkozek*, 822 F.3d 364, 368 (7th Cir. 2016) (explaining that a district court's "power to hear a petition for the writ [of *coram nobis*] derives from the statute conferring subject-matter jurisdiction in the original criminal case").

[5] *See United States v. Hassebrock*, 21 F.4th 494, 496 (7th Cir. 2021) (per curiam) (holding Rule 58 of the Federal Rules of Civil Procedure applies to *coram nobis* petitions); *cf. Jeffries v. United States*, 721 F.3d 1008, 1012 (8th Cir. 2013) (concluding "Rule 58(a) applies in appeals from § 2255 proceedings").